IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DIRECTV, LLC, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 5:13cv111 |
| v. ) | |
| ) | |
| ROBERT SAYLOR, <u>et al.</u>, ) | By:   Hon. Michael F. Urbanski |
| ) |        United States District Judge |
|     Defendants. ) | |

<u>MEMORANDUM OPINION</u>

This matter is before the court on several outstanding motions and for review of the report and recommendation issued by the magistrate judge on November 25, 2014, to which objections have been filed. For the reasons set forth below, the magistrate judge's report (Dkt. # 53) will be **ADOPTED in part** and **REJECTED in part**.

I.

In this action, plaintiff DIRECTV, LLC alleges that defendants Robert Saylor, Sky Cable, LLC, Bruce Taylor, Ellicott City Cable Company, LLC ("ECC"), and John Does 1-5 fraudulently obtained and assisted others in obtaining DIRECTV satellite programming and distributed that programming over unauthorized cable systems. DIRECTV also alleges that Saylor and Sky Cable engaged in the unauthorized use of its trademarks.[1] DIRECTV filed its initial complaint on December 6, 2013. Defendant Robert Saylor moved for leave to proceed <u>pro se</u> on behalf of both himself and Sky Cable, a "dormant" limited liability company of which he is the sole owner and managing director. By Order entered May 7, 2014, the court granted Saylor's request to proceed <u>pro se</u> as to himself, but denied his request to represent Sky Cable, as an artificial business entity cannot

---

[1] The facts of this case, as alleged in the amended complaint, are set forth in detail in the first eight pages of the magistrate judge's report and will not be repeated here.

proceed pro se or appear through lay representatives. See Rowland v. Calif. Men's Colony, 506 U.S. 194, 202-03 (1993); see also Yamassee Indian Tribe v. Allendale Cnty. Gov't, No. 1:13-1577-TLW-SVH, 2013 WL 5797682, at *3 (D.S.C. July 25, 2013). The court gave Sky Cable an extension of time until May 23, 2014 to secure counsel and file a responsive pleading. See Dkt. # 25. Sky Cable did neither[2] and is currently in default.[3]

On May 8, 2014, ECC and Taylor moved to dismiss the original complaint for lack of personal jurisdiction (Dkt. # 26). On May 19, 2014, Saylor filed a motion to dismiss the complaint for improper venue or, in the alternative, to transfer for binding arbitration (Dkt. # 29). DIRECTV thereafter filed an amended complaint on May 27, 2014, prompting defendants to renew their motions to dismiss.

DIRECTV's amended complaint raises eight counts:

- Count I – Receiving and Assisting Others in Receiving Satellite Signals in violation of 47 U.S.C. § 605(a) (all defendants)
- Count II – Intercepting and Procuring Others to Intercept Satellite Signals in violation of 18 U.S.C. § 2511(1)(a) (all defendants)
- Count III – Fraud (Saylor, Sky Cable, Taylor, ECC)
- Count IV – Unjust Enrichment (Saylor, Sky Cable, Taylor, ECC)
- Count V – Common Law Conspiracy (Saylor, Sky Cable, Taylor, ECC)
- Count VI – Statutory Business Conspiracy (Saylor, Sky Cable, Taylor, ECC)
- Count VII – Trademark Infringement, in violation of 15 U.S.C. § 1114 (Saylor and Sky Cable)

---

[2] Saylor did file a response to the court's Order on May 27, 2014, in which he states that Sky Cable does not have the resources to engage counsel in this matter. See Dkt. # 31.

[3] The court notes, however, that no party has moved for Clerk's entry of default pursuant to Federal Rule of Civil Procedure 55(a).

- Count VIII – False Designation of Origin, in violation of 15 U.S.C. § 1125(a) (Saylor and Sky Cable)

Am Compl., Dkt. # 32. In response to the amended complaint, Saylor moved to dismiss this case for improper venue pursuant to Rule 12(b)(3) or, in the alternative, moved for arbitration (Dkt. # 36). Saylor argues that venue in this district is improper because he moved to Utah in 2014 and does not have the resources to defend this case in Virginia. He further contends that the allegations took place in the states of Maryland and/or Kansas. Additionally, in his supporting brief, Saylor argues that the allegations fall within the scope of the DIRECTV SMATV[4] Affiliate Agreement ("Affiliate Agreement") entered into between DIRECTV and Sky Cable, which contains an arbitration provision.[5] Quoting passages from this court's opinion in Sky Cable v. Coley, No. 5:11cv00048, Dkt. # 107 (Mem. Op. Mar. 23, 2012), Saylor contends this Affiliate Agreement forms the basis of the relationship between Sky Cable and DIRECTV and provides that any dispute arising between the parties must be resolved at arbitration in Los Angeles, California. See Saylor's Br., Dkt. # 37.

For their part, defendants ECC and Taylor filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction (Dkt. # 42). ECC and Taylor claim that all of the alleged acts occurred in Maryland, they did not purposefully available themselves of the privilege of doing business in Virginia, and the exercise of personal jurisdiction over them in Virginia would not be constitutionally reasonable. They argue the amended complaint does not allege sufficient facts to establish that this court has personal jurisdiction over ECC and Taylor, and further contend that the allegations of conspiracy do not confer jurisdiction over them.

---

[4] SMATV stands for satellite master antenna television. Am. Compl., Dkt. # 32, at ¶ 27.

[5] Although the Affiliate Agreement has not been made an exhibit to this case, the parties agree the court can take judicial notice of the Agreement, which was filed in a previous case in this court involving Sky Cable and DIRECTV. See Sky Cable v. Coley, No. 5:11cv00048, Dkt. # 65-2.

By Order entered June 20, 2014, this case was referred to United States Magistrate Judge Joel C. Hoppe pursuant to 28 U.S.C. §§ 636(b)(1)(A) & (b)(1)(B). The magistrate judge held a hearing on September 19, 2014, at which DIRECTV made an oral motion for discovery and oral motion to transfer/change venue (Dkt. # 47), which also remains pending on the docket. On November 25, 2014, the magistrate judge issued a report and recommendation (Dkt. # 53). Objections to certain portions of the report have been filed, and the issues are ripe for consideration.

## II.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such

4

objection." Moon v. BWX Technologies, Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012) (citing Veney v. Astrue, 539 F.Supp.2d 841, 845 (W.D. Va. 2008)); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

### III.

**A. Defendants' motions to dismiss the original complaint (Dkt. # 26 & 29).**

In his report, the magistrate judge correctly concludes that defendants' motions to dismiss the original complaint should be denied as moot, as DIRECTV has filed an amended complaint. No objection to this portion of the report has been filed, and the court finds the magistrate judge's recommendation should be **ADOPTED**. Thus, the court will **DENY as moot** defendants' motions to dismiss the original complaint (Dkt. # 26 & 29).

**B. Saylor's motion to dismiss the amended complaint for improper venue pursuant to 28 U.S.C. § 1391 (Dkt. # 36).**

As regards Saylor's motion to dismiss the amended complaint for improper venue, the magistrate judge found the allegations in the complaint sufficient to establish a prima facie showing that venue is proper pursuant to 28 U.S.C. § 1391. He therefore recommends that Saylor's Rule 12(b)(3) motion be dismissed with prejudice. No objection to this portion of the magistrate judge's report has been filed, and the court finds the magistrate judge's recommendation should be **ADOPTED**. Thus, the court will **DENY with prejudice** Saylor's motion to dismiss the amended complaint for improper venue pursuant to 28 U.S.C. § 1391.

**C. Saylor's motion for arbitration (Dkt. # 36).**

In his motion, Saylor alternatively asks the court to "grant arbitration," which the magistrate judge construes as a motion to compel arbitration under section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. Saylor argues arbitration is required pursuant to the arbitration provision in the Affiliate

5

Agreement entered into by Sky Cable and DIRECTV sometime around 1998.[6] See Sky Cable v. Coley, No. 5:11cv00048, Dkt. # 65-2, at ¶ 5.9. The magistrate judge determined that the Affiliate Agreement's arbitration clause is broad and "covers the disputes that arose between DIRECTV and Saylor while the Agreement was in effect." Report & Recommendation, Dkt. # 53, at 16. Finding all claims against Saylor to be subject to arbitration under this provision, the magistrate judge recommends that the entirety of this litigation be stayed to allow Saylor and Sky Cable to arbitrate in California.

DIRECTV objects, arguing the magistrate judge fails to acknowledge that Saylor is not a party to the Affiliate Agreement and DIRECTV has not agreed to arbitrate its claims against Saylor in this case. DIRECTV further contends that its claims against Saylor are *ultra vires* to the Affiliate Agreement, and the amended complaint concerns actions taken by Saylor in the performance of certain consulting agreements he entered into with various real estate developers. Notwithstanding the fact that Saylor's actions stem from insider knowledge gained during the course of his professional relationship with DIRECTV, DIRECTV asserts the allegations in this case do not concern the Affiliate Agreement and are thus not subject to arbitration. DIRECTV further contends that should the court send DIRECTV's claims against Saylor to arbitration, a stay of the remaining claims against ECC and Taylor is inappropriate and would serve only to delay the matter and work prejudice to DIRECTV.

1.

The Federal Arbitration Act, 9 U.S.C. §§ 1–16, "represents 'a liberal federal policy favoring arbitration agreements. . . .'" Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,

---

[6] Although the Affiliate Agreement itself is undated, it appears the professional relationship between DIRECTV and Sky Cable dates back to 1998. Am. Compl., Dkt. # 32, at ¶ 6; see also Sky Cable v. Coley, No. 5:11cv00048, Dkt. # 59, at ¶ 6 (alleging Sky Cable was "DIRECTV's authorized affiliate and had been so since 1998").

6

24 (1983)). Arbitration is a matter of contract, and "courts must 'rigorously enforce' arbitration agreements according to their terms. . . .'" Am. Express Corp. v. Italian Colors Rest., ___ U.S. ___, 133 S. Ct. 2304, 2309 (2013) (internal citations omitted). A litigant can compel arbitration under the FAA if he can demonstrate "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002).

"When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings, and compel arbitration in accordance with the agreement's terms." Murray, 289 F.3d at 301 (citing 9 U.S.C. §§ 3–4). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25; see also Adkins, 303 F.3d at 500 ("'[A]mbiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.'" (citations omitted)). Where a valid arbitration agreement exists and the issues in a case fall within its purview, a court has no choice but to grant a motion to compel arbitration. Adkins, 303 F.3d at 500.

### 2.

In its objections, DIRECTV argues that Saylor cannot demand arbitration under the Affiliate Agreement because he is not a signatory to the contract. Indeed, the DIRECTV SMATV Affiliate Agreement upon which Saylor relies is a contract between DIRECTV, Inc. and Sky Cable, Inc., the "Affiliate."[7] It is signed by Helen Latimer, Director of Commercial Business for

---

[7] DIRECTV also asserts that Sky Cable, Inc. is not a party to the instant litigation—Sky Cable, LLC is the named defendant, and "there is no evidence before the Court to indicate that DIRECTV agreed to any transfer or rights and obligations under the Affiliate Agreement from Sky Cable, Inc., a Delaware corporation, to Sky Cable, LLC, a Virginia

7

DIRECTV, and by Rhonda Shifflett, Vice President of Sky Cable, Inc. However, the Fourth Circuit has held that "[a] non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract." Long v. Silver, 248 F.3d 309, 320 (4th Cir. 2001) (citing J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320 (4th Cir. 1988)). The court in Long stated:

> In this context, we see little difference between a parent and its subsidiary and a corporation and its shareholders, where, as here, the shareholders are all officers and members of the Board of Directors and, as the only shareholders, control all of the activities of the corporation. Cf. Thomson–CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir.1995) (noting theories of contract and agency law as examples under which a non-signatory can compel arbitration, including agency and veil piercing/alter ego). As in J.J. Ryan, the facts and claims against the Corporation and its shareholders are so closely intertwined that Long's claims against the non-signatory shareholders of the Corporation are properly referable to arbitration even though the shareholders are not formal parties to the 1972 Agreement. Likewise, the claims under the 1999 Agreement, of which all shareholders were formal parties, are similar to and dependent upon the claims under the 1972 Agreement. If the non-signatory shareholders were forced to litigate the issues arising under the 1972 Agreement, the arbitration proceedings involving the 1972 Agreement against the Corporation, as well as the arbitration proceedings involving the 1999 Agreement, "would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir.1976).

Id.

In the instant case, DIRECTV's claims against Saylor are based on the same facts and are inherently inseparable from its claims against Sky Cable. See Blumenthal-Kahn Elec. Ltd. v. Am. Home Assurance Co., 236 F. Supp. 2d 575, 582 (E.D. Va. 2002). The amended complaint alleges that Robert Saylor "is the owner of Defendant Sky Cable, LLC," Am. Compl., Dkt. # 32, at ¶ 5,

---

limited liability company." Pl.'s Obj., Dkt. # 54, at 4. The court notes in the same vein that DIRECTV, LLC is the plaintiff in the instant litigation and DIRECTV, Inc. is the signatory on the Affiliate Agreement. Nevertheless, the court does not find the corporate status of these entities to be significant for purposes of this analysis. Cf. J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320 (4th Cir. 1988) ("When charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration event though the parent is not formally a party to the arbitration agreement.")

8

and, in fact, DIRECTV refers to Robert Saylor and Sky Cable collectively as the "Saylor Defendants" throughout the majority of the amended complaint, see id. at ¶ 40. As such, the court finds that DIRECTV's claims against Saylor are properly referable to arbitration in spite of the fact that his signature does not appear on the Affiliate Agreement.[8]

### 3.

DIRECTV further contends that its claims against Saylor are *ultra vires* to the Affiliate Agreement and are not covered by its arbitration provision. Having given this argument careful consideration, the court cannot agree.

By entering into the Affiliate Agreement, DIRECTV and Sky Cable, the "Affiliate," indicated their desire:

> [T]o establish a business relationship whereby Affiliate will promote and implement the delivery of DIRECTV programming to certain of Affiliate's commercial customers. Pursuant to this Agreement, Affiliate will act as a commissioned sales representative of DIRECTV to solicit and take orders for certain DIRECTV programming from Commercial Establishment (as defined below).

Sky Cable v. Coley, No. 5:11cv00048, Dkt. # 65-2, at ¶ C. In addition to marketing and soliciting orders for DIRECTV programming, for which Sky Cable was to be paid a commission by DIRECTV, the Affiliate Agreement provides that Sky Cable would sell or lease necessary equipment, offer to install and maintain such equipment, and provide customer service to the

---

[8] While he is not a signatory to the Affiliate Agreement, the name "R. Saylor" does appear on the signature page near the bottom, where it says:

If By Personal Delivery:

Sky Cable, Inc.
109 S. Stuart Ave
Elkton, VA 22827
ATTN: R. Saylor
If by FAX: 540/298-2067
ATTN: R. Saylor
If by telephone: 504/298-0093

See Sky Cable v. Coley, No. 5:11cv00048, at Dkt. # 65-2.

9

Commercial Establishments seeking to set up DIRECTV programming. Id. at ¶¶ 2.1, 2.5. Of particular relevance here, the Affiliate Agreement also contains the following broadly-worded arbitration provision:

> **Any dispute or disagreement arising between DIRECTV and Affiliate shall be resolved according to binding arbitration conducted in Los Angeles, California** in accordance with the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association then in effect; provided, however, that the parties may seek injunctive relief in any court of competent jurisdiction and may enforce the provisions of any arbitration award in any court of competent jurisdiction. All rights and remedies of either party are cumulative of each other and of every other right or remedy such party may otherwise have at law or in equity, and the exercise of one or more rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of other rights or remedies.

Id. at ¶ 5.9 (emphasis added).

In the amended complaint, DIRECTV does not assert a claim for breach of this Affiliate Agreement (or any other contract for that matter).[9] But that fact alone is not dispositive. The arbitration provision states that "[a]ny dispute or disagreement" arising between DIRECTV and Sky Cable shall be resolved at arbitration—not merely any dispute arising out of the Affiliate Agreement. This clause, "by its own terms, reaches beyond the [Affiliate Agreement] itself to cover disputes arising from all aspects of the parties' relationship." Branchville Machinery Co., Inc. v. Agco Corp., 252 F. Supp. 2d 307, 311 (E.D. Va. 2003). In any event, the arbitrability of a dispute is determined by analyzing the factual allegations underlying the claim, id., not by the legal label assigned to it. J.J. Ryan & Sons, Inc., 863 F.2d at 819.

---

[9] This represents a significant difference between this case and the one on which Saylor relies in seeking to compel arbitration. In Sky Cable v. Coley, No. 5:11cv00048, Sky Cable did indeed assert a breach of contract claim against DIRECTV. Id. at Dkt. # 59, ¶¶ 146-53. It alleged that DIRECTV assigned the relevant Massanutten Resort account to Sky Cable as authorized DIRECTV affiliate, and that, in that capacity, Sky Cable was to receive a commission pursuant to the Affiliate Agreement. As the court found, Sky Cable's "claims against DIRECTV alleged in the amended complaint plainly arise out of Sky Cable's affiliate relationship with DIRECTV." Sky Cable v. Coley, No. 5:11cv00048, Dkt. # 107, at 5. As explained infra, however, the same can be said in this case, and the fact that DIRECTV does not assert a breach of contract claim is of no moment.

10

DIRECTV alleges that "[f]rom 1998 until 2011, Sky Cable was an authorized DIRECTV dealer," Am. Compl., Dkt. # 32, at ¶ 6, and:

> Using confidential information and knowledge acquired from DIRECTV while Sky Cable was a DIRECTV Authorized Dealer, the Saylor Defendants entered into consultancy agreements and accepted "consulting fees" in exchange for providing businesses with assistance in setting up private cable television systems in violation of both FCC regulations and DIRECTV's own programming agreements and applicable policy. Specifically, the Saylor Defendants concocted a scheme whereby companies would be able to obtain special programming packages from DIRECTV at discounted rates by misrepresenting both the type of properties that the programming would be distributed to, and the number of viewers that would be accessing the programming, in a manner than would not alert DIRECTV of the fraud.

Id. at ¶ 41. This alleged fraud took place in 2006 and 2007, while the parties' Affiliate Agreement was in effect. DIRECTV claims that in 2007, Sky Cable and Saylor were retained as a consultant by Kansas company Ideatek after representing they "'possess[ed] the acquired knowledge and experience as well as the appropriate relationship with DIRECTV®' to aid and assist the Client in properly qualifying the Client to purchase products from DIRECTV® MDU[10] Bulk Program . . . ." Id. at ¶ 42. DIRECTV alleges it paid Sky Cable and Saylor commissions on this fraudulent account, id. at ¶ 45, presumably pursuant to the terms of the Affiliate Agreement.

DIRECTV further alleges that in 2006, Sky Cable and Saylor were hired by defendants ECC and Taylor to set up a system to deliver satellite television programming to a property known as Taylor Village in Maryland:

> Using confidential information and knowledge acquired from DIRECTV while Sky Cable was a DIRECTV Authorized Dealer, the Saylor Defendants entered into one or more consultancy agreements with the ECC Defendants and accepted "consulting fees" in exchange for providing businesses with assistance in setting up private cable systems in violation of both FCC regulations and DIRECTV's own programming agreements and applicable policy.

---

[10] MDU stands for multiple dwelling unit. Am. Compl., Dkt. # 32, at 19.

11

Id. at ¶ 55.  DIRECTV alleges that Sky Cable and Saylor, acting in concert with ECC and Taylor, submitted documents to DIRECTV for the purpose of setting up SMATV and MDU accounts for Taylor Village, id. at ¶¶ 56, 59,  and that Saylor was the authorized installer of the private cable television system.  Id. at ¶ 56.  Documentation for the Taylor Village accounts lists Robert Saylor, or Jamie Shifflett (a Sky Cable employee), as "authorized officer/agent" for Taylor Village.  Id. at ¶ 57.  The amended complaint further alleges that Sky Cable and Saylor set up a similar system for ECC and Taylor at a property called Waverly Gardens around this same time.  Id. at ¶ 69.  Again, DIRECTV claims that Sky Cable and Saylor, acting in concert with ECC and Taylor, submitted account documents to DIRECTV for the purpose of setting up SMATV and MDU accounts for Waverly Gardens.  Id. at ¶¶ 70, 73.  DIRECTV further alleges that these accounts were managed by Sky Cable from its office in Elkton, Virginia.  Id. at ¶¶ 57, 62, 71, 77.

Plainly, these allegations concern conduct arising out of Sky Cable's status as DIRECTV's "Affiliate," pursuant to the terms of the parties' Agreement.  The Affiliate Agreement provides that Sky Cable will promote and implement DIRECTV programming to commercial customers, take orders for such programming, offer to install necessary equipment, and provide customer service on the accounts.  That is exactly what the amended complaint alleges that Sky Cable and Saylor did for Ideatek and for ECC and Taylor.  "The Supreme Court has repeatedly emphasized that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" O'Neil v. Hilton Head Hosp., 115 F.3d 272, 276 (4th Cir. 1997) (quoting Gilmer v. Interstate / Johnson Lane Corp., 500 U.S. 20, 26 (1991) (quoting Moses H. Cone, 460 U.S. at 24)).  Given the broadly worded arbitration provision agreed to by DIRECTV and Sky Cable, covering "any dispute or disagreement" between them, the court has no choice but to conclude that the claims alleged against Saylor in the amended complaint are subject to arbitration.

This includes DIRECTV's claims of trademark infringement against Saylor (Counts VII and

VIII). DIRECTV argues that it does not intend to pursue any claims of infringement prior to June 15, 2011, the effective termination date of the Affiliate Agreement, and thus these claims are not subject to arbitration, because the Agreement was no longer in effect at that point.[11] See Pl.'s Obj., Dkt. # 54, at 6 n.7. Even if the only relevant infringement allegations are those occurring after June 15, 2011, the allegations still arise out of Sky Cable's affiliate relationship with DIRECTV. DIRECTV alleges that upon termination of the Affiliate Agreement, Sky Cable failed to "discontinue its use of any and all DIRECTV trademarks, service marks, trade names and any other marks or other indicia of association as an authorized DIRECTV dealer" and failed to "cease and desist identifying itself as an authorized sales agent for DIRECTV or otherwise affiliated with DIRECTV." Am. Compl., Dkt. # 32, at ¶¶ 85, 86. The parties agreed to be bound by an arbitration clause that covers "[a]ny dispute or disagreement arising between DIRECTV and Affiliate." Sky Cable v. Coley, No. 5:11cv00048, Dkt. # 65-2, at ¶ 5.9. Plainly, these trademark infringement claims constitute a dispute arising from the parties' affiliate relationship and as such are subject to arbitration.

4.

Having determined that DIRECTV's claims against Saylor are subject to mandatory arbitration, the court must now address the procedural disposition of these claims. The magistrate judge recommends the court sua sponte stay this litigation, in its entirety, to allow arbitration

---

[11] As currently worded, the amended complaint alleges DIRECTV terminated Sky Cable as an Authorized Dealer of DIRECTV products and services effective April 13, 2011, Am. Compl., Dkt. # 32, at ¶ 84, that it terminated Sky Cable as an Authorized DIRECTV SMATV Affiliate effective June 15, 2011, id. at ¶ 85, and that "[s]ince at least April 13, 2011, the Saylor Defendants' use of the DIRECTV Marks and other actions described herein have been without authorization or consent by DIRECTV," id. at ¶ 86. Therefore, as the magistrate judge found in his report, the amended complaint alleges trademark infringement beginning April 13, 2011, while the Affiliate Agreement was still in effect.

The court notes, on this same subject, that while DIRECTV references terminating Sky Cable as an Authorized Dealer in a letter separate and apart from its letter terminating Sky Cable as an Authorized SMATV Affiliate, the court has no knowledge of any separate agreement through which Sky Cable operated as a DIRECTV Authorized Dealer. The only agreement between the parties of which the court is aware is the DIRECTV SMATV Affiliate Agreement.

between DIRECTV and Saylor to take place. DIRECTV objects to this recommendation, arguing:

> It is difficult to fathom that any findings that an arbitrator makes concerning Saylor's potential liability will have any preclusive effect with regard to Taylor/ECC in a trial or in motions practice in this Court. DIRECTV's trademark infringement claims are against Saylor only, and issue preclusion regarding the claims against all the defendants is unlikely, if they are arbitrated. The likely result is simply delay, which will prejudice DIRECTV.
>
> The Magistrate's recommended stay pending arbitration of DIRECTV's claims against Taylor/ECC will not conserve any judicial resources. Rather, DIRECTV will simply have to try the whole case over again, after an undefined period of delay. Insofar as no discovery has been conducted yet even though almost a full year has passed since the initial complaint was filed, DIRECTV is justifiably concerned that relevant evidence may be lost to the passage of time, and that it may continue to suffer damages and other harm during the pendency of the arbitration proceedings.

Pl.'s Obj., Dkt. # 54, at 8.

As the magistrate judge correctly notes, the decision as to whether the entire case should be stayed pending arbitration or whether the non-arbitrable claims should be litigated while arbitration is pending, "lies within the sound discretion of the district court." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 97 (4th Cir. 1996). To be sure, when there are questions of facts common to all claims, as there are in this case, "'considerations of judicial economy and avoidance of confusion and possible inconsistent results' may suggest that all proceedings should be stayed until the arbitration is completed." C.B. Fleet Co., Inc. v. Aspen Ins. UK Ltd., 743 F. Supp. 2d 575, 589 (W.D. Va. 2010). At the same time, however, the claims against Saylor are easily severable from the remaining claims in this case, and the court is mindful of the arguments raised by DIRECTV concerning prejudice and delay. No party has asked for a stay of these proceedings and, having weighed the competing interests, the court finds, on balance, that a stay is not appropriate in this case. Thus, the court will dismiss DIRECTV's claims against Saylor without prejudice to allow these parties to proceeding to arbitration in the Central District of

14

California.  See Forshaw Indust., Inc. v. Insurco, Ltd., 2 F. Supp. 3d 772, 790-91 (W.D.N.C. 2014) (holding district court lacks authority to compel arbitration when parties have agreed to arbitrate in another jurisdiction, and dismissing claims without prejudice to allow parties to arbitrate pursuant to their agreement's terms).  DIRECTV's claims against ECC and Taylor will proceed with litigation in this district.[12]

Accordingly, the magistrate judge's recommendation as to Saylor's motion to compel arbitration will be **ADOPTED in part** and **REJECTED in part**.  Saylor's motion to compel arbitration will **GRANTED**, and all claims asserted by DIRECTV against Saylor in this case will be **DISMISSED without prejudice** to allow arbitration to proceed in California.  The remaining claims against ECC and Taylor will be set down for further proceedings.

**D. ECC and Taylor's motion to dismiss (Dkt. # 42).**

ECC and Taylor (the "ECC Defendants") move to dismiss the claims against them for lack of personal jurisdiction.  They contend that all of acts alleged in the amended complaint occurred in Maryland, ECC Defs.' Br., Dkt. # 42-1, at 2, that Virginia has no interest in this litigation, id. at 13, and that the allegations in the amended complaint are insufficient to establish personal jurisdiction, id. at 14-17.  Specifically, the ECC Defendants argue that the agreements entered into between ECC and Sky Cable do not provide a sufficient basis upon which the court can exercise personal jurisdiction over the ECC Defendants in this case.  They argue these agreements were made and performed exclusively in Maryland and, aside from the fact that Sky Cable was (formerly) a Virginia-based company, have no connection whatsoever to Virginia.  Id. at 17-19; see also id. at 23-26.

As the magistrate judge correctly noted in his report and recommendation, the ECC

---

[12] There is pending on the docket an oral motion for discovery and/or to transfer venue (Dkt. # 47) made by DIRECTV at the September 2014 hearing before the magistrate judge.  This motion is not addressed in the magistrate judge's report, and the court does not have a transcript of the September 2014 proceedings.  Thus, the court does not have sufficient information to address this motion at this juncture.  As such, the motion will be **DENIED without prejudice**.  Should DIRECTV wish to seek a transfer of venue based on the court's ruling as set forth herein, it may so move.

15

Defendants' argument "misses the mark;" the question is not "*where* the contacts predominate," it is "'*whether* enough minimum contacts with the forum exist such that the district court's assumption of specific jurisdiction does not offend due process.'" Production Group Int'l, Inc. v. Goldman, 337 F. Supp. 2d 788. 798 (E.D. Va. 2004) (quoting English & Smith v. Metzger, 901 F.2d 36, 39 (4th Cir. 1990) (internal brackets omitted)). The magistrate judge determined that the ECC Defendants' alleged ongoing relationship with Sky Cable is, at this point in the litigation, sufficient to constitute a prima facie showing that they purposefully availed themselves of the privilege of conducting business in the Commonwealth, Report & Recommendation, Dkt. # 53, at 33, and that this relationship forms the basis of DIRECTV's allegations against the ECC Defendants in this case, id. at 34. Additionally, the magistrate judge determined that DIRECTV's allegations are enough to establish the court's authority to exercise conspiracy jurisdiction over ECC and Taylor at this early stage of the litigation. Id. at 38. Thus, the magistrate judge recommends that the court deny the ECC Defendants' motion without prejudice. Reiterating many of the same arguments raised in their motion to dismiss, the ECC Defendants object to this recommendation and ask that, at the very least, the court order a period of jurisdictional discovery. ECC Defs.' Obj., Dkt. # 55.

Before exercising personal jurisdiction over a non-resident defendant, a court must find that two conditions are satisfied: first, that the state's long-arm statute "authorizes the exercise of jurisdiction in the circumstances presented;" second, that "the exercise of jurisdiction comports with Fourteenth Amendment due process standards." Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). Because Virginia's long-arm statute, Virginia Code § 8.01-328.1, extends personal jurisdiction to the extent permitted by the Due Process Clause, see English & Smith, 901 F.2d at 38, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996). The question, then, is whether the defendant has sufficient "minimum contacts

16

with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Determining the reach of judicial power over persons outside of a state's borders under the International Shoe standard is undertaken through two different approaches—by finding specific jurisdiction based on conduct connected to the suit, or by finding general jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). With regard to specific jurisdiction, which is of concern here, a court is required to evaluate "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s]claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs. Inc., 334 F.3d 390, 397 (4th Cir. 2003) (citing ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711–12 (4th Cir. 2002) & Helicopteros, 466 U.S. at 414 & n.8)).

In this case, the amended complaint alleges that the ECC Defendants hired Saylor and Sky Cable, a Virginia-based company, to set up a system to deliver television programming to properties known as Taylor Village and Waverly Gardens in Maryland and entered into consultancy agreements to that effect. Am. Compl., Dkt. # 32, at ¶¶ 55, 69. DIRECTV claims that Saylor, Sky Cable, and the ECC Defendants, acting in concert and in furtherance of a scheme to defraud, submitted false account information to DIRECTV for purposes of setting up SMATV and MDU accounts for Taylor Village and Waverly Gardens, id. at ¶¶ 56-57, 59-60, 70-71, 73-75, and that this fraudulent account documentation was sent to DIRECTV by fax from Virginia, where the accounts were managed by Sky Cable, id. at ¶¶ 57, 62, 71, 77. These allegations give rise to Counts I – VI of the amended complaint.

Taking all disputed facts and reasonable inferences in DIRECTV's favor, as it must, see

17

Carefirst, 334 F.3d at 396, the court is satisfied that DIRECTV has alleged enough, for purposes of this Rule 12(b)(2) motion to dismiss, to establish the court has personal jurisdiction over the ECC Defendants. See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009) ("Where, as here, the district court addresses the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."). The magistrate judge thoroughly addressed the arguments raised by the parties in their voluminous briefs on this subject, and the court finds his reasoning to be well-supported. As such, the magistrate judge's recommendation will be **ADOPTED** and the ECC Defendants' motion to dismiss will be **DENIED without prejudice**.[13]

## IV.

In sum, the magistrate judge's report and recommendation (Dkt. # 53) will be **ADOPTED in part** and **REJECTED in part**; defendants' motions to dismiss (Dkt. # 26 & 29) will be **DENIED as moot**; Saylor's motion to dismiss for improper venue (Dkt. # 36) will be **DENIED with prejudice**; Saylor's motion to compel arbitration (Dkt. # 36) will be **GRANTED**; DIRECTV's claims against Saylor will be **DISMISSED without prejudice** to allow arbitration to proceed in the Central District of California; the ECC Defendants' motion to dismiss for lack of personal jurisdiction (Dkt. # 42) will be **DENIED without prejudice**; and DIRECTV's oral motion for discovery and/or to transfer venue (Dkt. # 47) will be **DENIED without prejudice** at this time.

---

[13] DIRECTV asserts that it filed this case in the Western District of Virginia "because at the time of filing, Saylor and Sky Cable (the "Saylor Defendants") were unquestionably domiciled here for purposes of personal jurisdiction and venue, and they were the primary actors in terms of the conduct alleged in the lawsuit." DIRECTV's Resp. to Mot. to Dismiss on Pers. Juris., Dkt. # 43, at 2. The procedural posture of this case has since changed. As indicated, supra, in footnote 12, the court will entertain a motion to transfer venue, should DIRECTV or any other party wish to file one.

An appropriate Order will be entered.

Entered: March 31, 2015

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge